## SAN FRANCISCO SAVINGS UNION v. LONG et al.*

### S. F. No. 1041; July 1, 1898.

#### 53 Pac. 907.

**Mutual Life Insurance—Deposit of Funds—Lien.**—Under Statutes of 1891, page 126, section 2, compelling mutual assessment life insurance companies to deposit a fund for the protection of policyholders, and section 4, providing that the beneficiaries shall have a lien on all property of the corporation, with priority over all indebtedness thereafter incurred, one who was entitled to payment of a death benefit at the time the statute became effective had a lien on such deposit as soon as it was made, the protection of the lien being not restricted to after-incurred debts.

**Life Insurance—Subrogation.**—Where Sureties for a Life Insurance Company were obliged to pay a death benefit, they are entitled to be subrogated to a lien in favor of the beneficiary on a fund created for the protection of policy-holders.

**Mutual Life Insurance Company.**—Where the Holder of a Deposit Created under Statutes of 1891, page 126, section 2, providing that assessment life insurance corporations shall deposit a certain sum for the protection of policy-holders, had brought an action to interplead various claimants to such fund, it was proper to permit a party who claimed the right to enforce a beneficiary's lien on such fund to assert such lien in the same action, and not to relegate him to a creditors' bill or a writ of execution.

**Subrogation—Assignment of Right.**—The Right of Sureties to be subrogated to a lien on their principal's property may be assigned.

**Subrogation.**—Where Sureties had Paid Part of a Judgment against the principal, which had paid the balance itself, and were entitled to be subrogated to a lien against the principal, the enforcement by their assignee of such lien to the amount paid by them is a single demand, and not obnoxious to the rule against splitting demands.

---

*For subsequent opinion in bank, see 123 Cal. 107, 55 Pac. 703.

Subrogation.—A Surety Who has not Contributed to the Payment of the principal's judgment debt is not a necessary party to the determination of a right of lien claimed by the assignee of his co-sureties by subrogation to the rights of the judgment creditor.

Mutual Life Insurance.—Allegations That a Judgment Out of Which Defendant's claim grew was based on a certificate of life insurance issued by a named life association to one L. M. on May 1, 1896, and in favor of M. M., who was then the wife of said L. M.; that said certificate was for the sum of $6,000; that on a certain date said M. died, and at the time the said certificate was in full force and effect, and by reason of his death, there became due and payable, etc., in the absence of demurrer or objections to their sufficiency below, sufficiently plead such policy, performance of conditions thereof, and accrual of the right of action thereon.

Mutual Life Insurance.—Where a Lien on a Fund Created to Secure Payment of death benefits under Statutes of 1891, page 126, sections 2, 4, relating to assessment life insurance corporations, attached pending an action on a policy, the establishment of such indebtedness by final judgment gave the right to enforce such lien, and it attached to the judgment, and continued until same was satisfied; and hence such lien did not, by virtue of Civil Code, section 2911, providing that liens shall be extinguished on the expiration of the time within which an action may be brought on the principal obligation, become extinguished on the lapse of such period of limitation from the time the lien attached.

Mutual Life Insurance.—Where a Lien on a Fund Created to Secure payment of death benefits under Statutes of 1891, page 126, sections 2, 4, relating to assessment life insurance corporations, attached pending an action on a policy, the establishment of such indebtedness by final judgment gave the right to enforce such lien; and, such enforcement being sought in an action begun thereafter within the time prescribed for bringing an action on the policy, the claim of lien was not barred by limitation, though more than the period of such limitation had elapsed since the lien attached.

APPEAL from Superior Court, City and County of San Francisco.

Action by the San Francisco Savings Union against E. B. Long and others. From a judgment in favor of defendant Guy Shoup and another and from orders denying a new trial the other defendants appealed. Affirmed.

Dorn & Dorn, Chas. S. Perry, Theo. Savage, T. Carl Spelling and Guy Shoup for appellants; H. C. Campbell, Lane & Lane, Byron Waters and Van Ness & Redman for respondents.

BELCHER, C.—The plaintiff is, and at all the times mentioned in the complaint was, a savings bank, duly incorporated, and doing business as such under the laws of this state. The defendant Home Benefit Life Association was organized as a corporation under the laws of this state in 1880, and from that time until on or about September 26, 1894, was continuously engaged doing a life insurance business upon the assessment plan.

In March, 1891, an act was passed by the legislature, entitled "An act relating to life, health, accident and annuity or endowment insurance on the assessment plan, and the conduct of the business of such insurance" (Stats. 1891, p. 126), which contained the following provisions:

"Sec. 2.    Corporations may be formed under the general laws of this state to carry on the business of mutual insurance upon the assessment plan, and shall be subject only to the provisions of this act.    No such corporation shall issue contracts of insurance until at least two hundred persons have applied, in writing, for membership or insurance therein, and have paid to the treasurer of such corporation the sum of five thousand dollars.    This sum shall be invested in bonds or securities, approved by the insurance commissioner of this state, or deposited in some bank in this state, where it will earn interest.    Said bonds or securities, or evidences of such deposit, shall be placed, through the insurance commissioner of this state, with the state treasurer, and the principal sum shall be held in trust for the contract holders of such corporation," etc.

"Sec. 3.    Any existing corporation engaged in transacting the business of life, health, accident or endowment insurance on the assessment plan may reincorporate under the provisions of the Civil Code of this state and under the provisions of this act: provided, that it shall not be obligatory upon such corporation to reincorporate; and any such existing corporation may continue to exercise all rights, powers and privileges conferred by this act the same as if incorporated hereunder.

"Sec. 4.    The contracts of insurance issued by such corporation shall specify the sum or sums to be paid upon the happening of the contingency insured against, and when such payments will be made.    Unless the contract shall have been invalidated by fraud or by breach of its conditions, the cor-

poration shall be obligated to pay the beneficiary the amount or amounts specified in its contract at the time or times therein named, and such indebtedness shall be a lien upon all the property of such corporation, with priority over all indebtedness thereafter incurred,'' etc.

In compliance with the requirement of said act the Home Benefit Life Association on March 15, 1892, deposited in the San Francisco Savings Union, plaintiff herein, the sum of $5,000 as a term deposit, and took a ''special certificate of term deposit'' therefor. This certificate the said association, on the next day, by an indorsement written on the back thereof, assigned and transferred to the insurance commissioner of the state for the protection of its certificate-holders; and thereupon the said commissioner, in pursuance of the requirements of the said act of 1891, caused the said certificate to be placed and deposited with the then state treasurer, and the plaintiff was notified of the assignment at or about the time it was made. In September, 1894, the said association became insolvent, and ceased to do business. At that time the association was indebted upon contracts of insurance of deceased members in the sum of more than $50,000, and nearly all the property applicable to the payment of these claims was the said $5,000 on deposit in the plaintiff's bank. There were also more than one hundred living contract members of the association. Prior to and about the time it suspended business, several suits upon the death claims were commenced against the association, some of which had gone to judgment before this case was tried, and some were still pending. Various remedies were resorted to by said claimants for the purpose of realizing wholly or in part upon their claims, and each sought to establish a first lien upon the said deposit. Under these circumstances, the plaintiff brought this action against the conflicting claimants of the said money to compel them to interplead and litigate their several claims among themselves. The said association, the state treasurer, the insurance commissioner, and about one hundred and thirty certificate-holders, including the judgment creditors, were made parties defendant. The complaint set out the facts and stated that the plaintiff was ignorant of the respective rights of the defendants; that it had and made no claim to the said money, and was ready and willing to pay the same into court upon the surrender and cancellation of said certificate. And the

prayer was that the defendants be required to interplead; that the state treasurer and insurance commissioner be required to deposit the said certificate in court; and that thereupon plaintiff be permitted to pay into court the sum of $5,000, with the accrued dividends thereon; and that, upon so doing, the certificate be canceled by the clerk, and the plaintiff be discharged from all liability to each and all of the defendants in relation thereto. Answers and cross-complaints were filed by the defendants, setting up their respective claims and rights to the said money, and controverting the alleged rights of others thereto. When the cause came on for trial, the said certificate of deposit and the money in controversy, then, with the accrued dividends thereon, aggregating $5,743.16, were, in pursuance of an order of court duly made and entered in its minutes, deposited in court. The cause was then tried and submitted, and thereafter the court made and filed its findings of fact and conclusions of law, whereby it was found and determined that the defendant Guy Shoup had the first lien upon the money deposited in court by the plaintiff, to the extent of $4,310.10, with interest thereon, and was entitled to be first paid out of said money the sum of $4,735.87, and that the defendant Sophia Koneke had the second lien upon the said money, superior to that of all claimants except said Shoup, and was entitled to the balance of said money, less a small amount of costs, namely, the sum of $997.20; that the remaining defendants were not entitled to anything by reason of the action; and that the plaintiff was entitled to be released and discharged from all liability to any and all of the parties to the action for and on account of the said money. A decree was accordingly so entered, from which, except that portion thereof awarding a part of the money to Mrs. Koneke, nearly all of the defendants have appealed, and two of them have also appealed from orders denying their motions for a new trial.

The record presented covers more than three hundred pages of the printed transcript, and there have been several suggestions of a diminution of the record, and some of the omitted parts have been since supplied. Ten briefs have been filed on behalf of the contesting parties, and the questions discussed are numerous, and some of them complicated. The principal question relates to the rights of respondent Shoup,

and to that we shall chiefly give our attention. It is earnestly contended that Shoup had no interest in or right to any of the money, and that the court erred in awarding to him any part of it. The facts upon which the alleged rights of Shoup were based are as follows: On May 1, 1886, the Home Benefit Life Association executed and delivered to Lemuel T. Murray its certificate of membership, by the terms of which it promised to pay to his wife, Miranda E. Murray, the sum of $6,000 upon his death and upon the prior performance by him of all the conditions of the said certificate. Murray died September 29, 1886, and meantime he had complied with and performed all the conditions of the certificate of membership. Mrs. Murray made due proof of his death and of her claim under said certificate, and, by reason of his death, there became due and payable to her from the said association the sum of $6,000. In due time she demanded of the association payment of the said sum of money; but it refused to pay the same, or any part thereof, and claimed that said certificate was not in force at the time of Murray's death. In July, 1888, Mrs. Murray commenced an action in the superior court of the city and county of San Francisco against the association to recover the sum of $6,000, with interest, alleged to be due her on the said certificate. The action resulted in a judgment, rendered May 17, 1892, in favor of the plaintiff (then, by reason of her second marriage, known as and called Miranda E. Mills), and against the defendant, for the sum of $8,255.08, and $215 costs of suit. From that judgment, and an order denying a new trial, an appeal to this court was taken by the defendant association; and a stay bond or undertaking was executed and filed by it, on which W. H. Chickering and F. C. Havens were sureties. On December 26, 1894, the judgment and order were affirmed by this court (Mills v. Association, 105 Cal. 232, 38 Pac. 723); and in due time a remittitur was sent to the clerk of the court below. At the time of the affirmance there was due and owing from the defendant to Mrs. Mills the sum of $10,130.22, and of this sum the said Chickering and Havens, by reason of their liability as sureties under the stay bond, were compelled to, and did, pay from their own funds, to Mrs. Mills, in the months of April and September, 1895, $4,310.10, the balance of the judgment being paid from other funds of the association. On October 8, 1896, said Chickering and Havens sold, assigned

and transferred in writing to respondent Shoup all their right, title and interest in and to the said judgment, so partially paid and satisfied by them, and also all their interest in and claim of lien upon the money paid by the plaintiff into court in this action. Upon these facts the court found: "That the said Miranda E. Mills acquired a lien securing her claim arising as aforesaid upon the money paid into court by the plaintiff immediately upon its deposit with the plaintiff by said Home Benefit Life Association, as above found, by reason of the provision of the act of 1891, above referred to; that the lien thereby acquired was then, and ever since has been, the first lien upon said money or fund, and was and is superior and prior to all others"; and "that by reason of the partial payments made by said sureties as aforesaid, and the said assignment made by them to defendant Shoup, he (the said defendant Shoup), ever since the date of said assignment, has had and now has, the first lien upon said sum or fund of money, to the extent of said sum of $4,310.10, with interest thereon from the dates of payment thereof, as before found."

It is claimed that these findings were mere conclusions of law, and were not supported by the facts proved or found by the court. But we think it must be held that, under the provisions of the act of 1891, the indebtedness due Mrs. Mills became a lien on the money deposited with plaintiff as soon as the deposit was made. The act does not seem to limit the lien to indebtedness arising after the act was passed, but makes it apply to all indebtedness upon certificates of insurance, whether it became due and payable before or after the passage of the act. And, if this be so, then it is clear that, so far as is shown by the record, Mrs. Mills had the first lien upon the said money to secure payment of her claim; and, when Chickering and Havens paid a part of her judgment, they were subrogated to all her rights as to the amount paid. "The general rule is that a surety who pays the debt of his principal will be subrogated to all the securities, liens and equities, rights, remedies and priorities held by the creditor against the principal, and entitled to enforce them against the latter in a court of equity or of equitable jurisdiction": 24 Am. & Eng. Ency. of Law, p. 194. And see the numerous authorities cited in support of the proposition. Chickering and Havens were therefore entitled to claim and enforce the lien which Mrs.

Mills had, and, and, when they assigned to Shoup, he succeeded to all their rights.

But say appellants: "At any rate, neither the sureties nor their assignee may entertain any other action based upon the substitution than a creditors' bill. They may, by a supplementary proceeding, discover equitable assets, and, having discovered them, may resort, first, to garnishment or other legal process, and, upon that proving ineffectual, bring an action in equity in the nature of a creditors' bill to subject them to the satisfaction of the judgment. But, if such action and such proceeding are not needed, they can only resort to an execution." This proposition cannot be sustained. Evidently, Shoup was compelled to assert his rights in this action, if he would assert them at all. The action was one of interpleader, in which all the claims to the money in controversy were to be disposed of. It admitted necessarily the assertion of equitable as well as legal rights, and the court was authorized and empowered to adjust them all.

It is next urged that the right of the sureties was a mere equity, and was not assignable; and, in support of this proposition, Sanborn v. Doe, 92 Cal. 152, 27 Am. St. Rep. 101, 28 Pac. 105, is cited. That case has no bearing upon the question in hand. It related to a question of fraud, and it was simply held that "a right to complain of fraud is not assignable."

"The rule against splitting demands" is also invoked, and it is claimed that under it respondent was not entitled to recover. But that rule does not apply here. The association paid a portion of the judgment, and the sureties paid the balance of it. After the judgment was paid, there remained but one demand, and that was held by the sureties. No question, therefore, as to "splitting demands" could be involved.

Appellants further say: "Even if a part of such claims were assignable, there would still exist a defect of parties; and there could be no final determination of the rights of the parties unless the judgment creditor and the other obligor on the bond were before the court." But the judgment creditor, Mrs. Mills, was before the court, and the other obligor, Mr. Allen, paid nothing, and had no claim to be satisfied.

It is also claimed that the answer and cross-complaint of defendant Shoup stated no cause of action entitling him to any equitable relief; and it is said: "There is not a single

allegation upon which to base a claim to this or any form of equitable relief, even if that act covered the Mills claim"; that "the terms of the certificate or policy of life insurance are not set forth or even mentioned"; and that the pleading "does not allege the performance of any of the conditions of any certificate or policy of life insurance" by Murray, nor the furnishing of any proofs of his death. The answer and cross-complaint, after setting out the facts in relation to the judgment recovered by Mrs. Mills, the appeal therefrom, etc., alleged "that the said judgment so rendered in favor of said Miranda E. Mills was based upon a certificate or policy of life insurance issued by said Home Benefit Life Association to one Lemuel T. Murray, on May 1, 1896, and in favor of said Miranda E. Mills, who at said last-named date was the wife of said Murray; that said certificate was for the sum of $6,000; that thereafter, and upon the twenty-ninth day of September, 1896, the said Murray died; and that at said time the said certificate was in full force and effect; and that, by reason of his said death, there became due and payable," etc. No demurrer to the pleading was filed, nor, so far as appears, was any objection to its sufficiency raised in the court below. We think, therefore, it must be held to have stated all the facts necessary for the purposes of this action, and that the objections to it cannot be sustained.

It is objected that, at any rate, respondent had no lien on the deposited money, and counsel say: "I know of no law which gives one whose life is insured a lien on the property of the insurer, or which makes the insurer a debtor to the insured." But that, in cases like this, the beneficiary of the insured may have a lien on the property of the insurer was expressly declared by the act of 1891; and it was so held in Kruger v. Association, 106 Cal. 98, 39 Pac. 213.

It was further objected that the Shoup claim was barred by the statute of limitations; and, in support of this objection, counsel cite section 2911 of the Civil Code. That section is as follows: "A lien is extinguished by the lapse of the time within which, under the Code of Civil Procedure, an action can be brought upon the principal obligation." The section is not a statute of limitation, but relates alone to the extinguishment of liens. The question, then, is, Had the lien of the Mills-Shoup claim become extinguished before Shoup filed his answer and cross-complaint? We do not think it

had.   An action upon the principal obligation was brought in 1888, and was pending when the act of 1891 was passed. The deposit was made March 15, 1892; and thereupon, under section 4 of the act, Mrs. Mills' claim became a lien upon the money deposited, which might be thereafter enforced, provided the claim should be established as a valid indebtedness. When judgment was recovered in the action, the judgment became a lien on the money, and continued to be so until the amount thereof was or shall be paid.   It was not necessary for Mrs. Mills to change her pleading, and ask for an enforcement of the lien, as it did not become merged in the judgment, but was attached to it and accompanied it to the end. It is evident, therefore, that the lien claimed by Shoup had not become extinguished.

Nor do we think, if the statute of limitations had been properly pleaded, as it was not, that Shoup's claim of lien would have been barred.   The lien is statutory, and exists until the indebtedness which it secures is satisfied.   Mrs. Mills' claim was not finally established until December, 1894, when her judgment was affirmed by this court, and she was not required to assert any right to a lien before that.   This action was commenced March 31, 1896, and Shoup's answer and cross-complaint was filed October 9, 1896.   This was in time, and his claim was not then barred.

Many other points are made and very elaborately and ably argued by counsel, but to review them would require this opinion to be extended to a very great length.   We have carefully considered all the points made, and are of the opinion that no error calling for a reversal is shown; and as the judgment and order must be affirmed, if we are right in what has already been said, any discussion of the other points presented seems unnecessary.   We advise that the judgment and order appealed from be affirmed.

We concur: Chipman, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.